UNITED STATES DISTRICT COURT                          <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WILLIAM QUINTANILLA,

                            Plaintiff,          **<u>MEMORANDUM & ORDER</u>**
                                           19-CV-06894 (JMA) (ARL)

            -against-

PETE'S ARBOR CARE SERVICES, INC. and
PETER FIORE,

                           Defendants.
-------------------------------------------------------------------X
**AZRACK, United States District Judge:**

       Plaintiff William Quintanilla obtained a jury verdict that awarded $1,600 for unpaid overtime wages that he earned when he worked for Defendants Peter Fiore and Pete's Arbor Care Services, Inc. in 2015.  (ECF No. 82.)  Presently before the court is Plaintiff's post-trial motion for attorney's fees and costs under New York Labor Law ("NYLL") section 198(1-a).  (ECF No. 83.)  As set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

       Plaintiff commenced this action by filing his Complaint in December 2019.  (ECF No. 1.)  Plaintiff asserted, on behalf of himself and a putative class of similar employees of Defendants, that Defendants violated the Fair Labor Standards Act ("FLSA") and NYLL by failing to provide a wage notice and wage statements; failing to make minimum wage, spread of hours, and overtime payments; and retaliating in response to complaints about the failure to pay those amounts.  (<u>See</u> <u>generally</u>, <u>id.</u>)

       Over the next two years, the parties conducted discovery and participated in three unsuccessful attempts at settlement.  (<u>See</u> ECF Nos. 10, 13, 43 (reflecting that the parties participated in a July 2020 mediation, an October 2020 settlement conference, and a November 2021 settlement conference).)  During that time, Plaintiff filed six motions to compel Defendants to produce employment records or participate in depositions.  (<u>See</u> ECF Nos. 15, 18, 21, 25, 28,

37.)  Those motions were granted in part and denied in part.  (See ECF Nos. 17, 20, 26, 32, 39.)

The parties then cross-moved for summary judgment.  (See ECF Nos. 47, 49; see also ECF Nos. 54, 59 (re-filed copies of the summary judgment motions).)  The undersigned referred those motions to Magistrate Judge Arlene R. Lindsay and later adopted Judge Lindsay's report and recommendation to deny the motions.  See Quintanilla v. Pete's Arbor Care Servs., Inc., No. 19-CV-6894, 2023 WL 4238863, at *1 (E.D.N.Y. June 28, 2023), adopting 2023 WL 4237473 (E.D.N.Y. June 12, 2023).

Notwithstanding the denial of the parties' summary judgment motions, some claims were dismissed before trial.  Plaintiff withdrew the FLSA claims at the Court's request given their redundancy to the NYLL claims.  (ECF No. 73; see Nov. 9, 2023, Order (encouraging Plaintiff to dismiss the FLSA claims for "[e]conomy and convenience for the parties, the jury, and the Court")); see also Shibetti v. Z Rest., Diner & Lounge, Inc., 478 F. Supp. 3d 403, 410 (E.D.N.Y. 2020) ("[T]he FLSA claims, standing alone, offer plaintiffs no additional rights to those provided by the [NYLL].").  The Court dismissed Plaintiff's wage notice and wage statement claims for lack of standing.  (See Nov. 10, 2023, Order); see also N.Y. LAB. LAW §§ 195(1), (3) (requiring employers to provide wage notices and wage statements).

The jury trial began on November 13, 2023, and concluded on November 16, 2023.  (See ECF Nos. 75, 77-78, 80.)  At trial, the Court dismissed the minimum wage and spread of hours claims.  (See ECF No. 80); see also LAB. LAW § 652 (requiring minimum wage payments); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (requiring spread of hours payments).  Thus, the claims that went to the jury were for unpaid overtime wages from 2015 to 2019 and retaliation for complaining about wages.  (ECF No. 82 ¶¶ 1-6); see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (governing overtime payments); LAB. LAW § 215 (prohibiting retaliation).  At trial, Plaintiff

2

contended he was paid a flat daily rate; sought compensatory and liquidated damages for allegedly entirely unpaid overtime hours worked between 2015 and 2019; and sought front pay, back pay, pain and suffering, and punitive damages for the alleged retaliation.  (See ECF Nos. 65-1, 82.) The jury, however, found that (1) Plaintiff was paid hourly rather than a flat daily rate, (2) Plaintiff was owed only $1,600 for partially unpaid overtime wages earned in 2015,[1] (3) Defendants acted in good faith when they neglected to make those payments, and (4) Plaintiff failed to establish that Defendants retaliated against him.  (See ECF No. 82.)

After trial, the parties briefed Plaintiff's instant motion for attorney's fees and costs. (See Mem. L. Supp. Pl.'s Mot. Recov. Award Reason. Att'ys' Fees ("Pl. Mem."), ECF No. 83-1; Mem. L. Opp'n Pl.'s Mot. Award Att'y's Fees ("Opp."), ECF No. 86-1; Pl.'s Mem. L. Further Supp. Pl.'s Mot. ("Reply"), ECF No. 87-6.)  At the Court's request, Plaintiff's counsel resubmitted their billing records in a format that addressed attorneys separately from student law clerks.  (See ECF No. 89.)

## II.    LEGAL STANDARDS

### A.    Authorization for Attorney's Fees and Costs

State law determines whether to grant attorney's fees and costs when, as here, a party prevails on only state law claims.  See Chambers v. NASCO, Inc., 501 U.S. 32, 51-52 (1991); Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 147-48 (2d Cir. 2014); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005); see also

---

[1] Specifically, the jury found that Defendants paid Plaintiff $16.00 per hour in 2015, $18.00 per hour in 2016, $20.00 per hour in 2017, $22.00 per hour in 2018, and $25.00 per hour in 2019.  (ECF No. 89 ¶¶ 7-8.)  The Jury also found that Plaintiff's only improperly compensated hours were as follows: ten overtime hours per week for twenty weeks in 2015 were paid at the regular hourly rate of $16.00 instead of the 1.5X overtime hourly rate of $24.00.  (Id. ¶¶ 6-9.)  Thus, the $8.00 overtime hourly shortfall multiplied by the ten undercompensated overtime hours per week yields an $80 weekly shortfall.  That $80.00 weekly shortfall multiplied by the twenty weeks Plaintiff worked yields $1,600 in unpaid wages.

3

Gortat v. Capala Bros., 795 F.3d 292, 297 (2d Cir. 2015) (remanding for determination of whether the NYLL, rather than the FLSA, allows recovery of expert costs).  The Court will also rely upon federal jurisprudence given its similarity to New York law.  See, e.g., Major League Baseball Properties, Inc. v. Corporacion de Television y Microonda Rafa, S.A., No. 19-CV-8669, 2021 WL 56904, at *2 (S.D.N.Y. Jan. 7, 2021) (taking this approach because "New York cases themselves commonly cite to federal case law in articulating principles relating to an award of attorney's fees" (first citing Albunio v. City of New York, 23 N.Y.3d 65, 73-74 (2014); and then citing Degregorio v. Richmond Italian Pavillion, Inc., 935 N.Y.S.2d 70, 72 (App. Div. 2nd Dep't 2011))).

The NYLL requires the Court to award Plaintiff reasonable attorney's fees and costs for his successful wage claim.  See LAB. LAW §§ 198(1), (1-a); Odeon Capital Grp. LLC v. Ackerman, 864 F.3d 191, 198-99 (2d Cir. 2017); Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 16 (2012).

**B.      Determining Attorney's Fees**

Courts routinely apply the lodestar method to determine reasonable attorney's fees for plaintiffs who prevail on wage claims under the NYLL.  See Luo v. L&S Acupuncture, P.C., 649 F. App'x 1, 2 (2d Cir. 2016); Francois v. Mazer, 523 F. App'x 28, 29 (2d Cir. 2013); Matakov v. Kel-Tech Constr. Inc., 924 N.Y.S.2d 344, 346 (App. Div. 1st Dep't 2011); Zabrodin v. Silk 222, Inc., No. 22-CV-7064, __ F. Supp. 3d__, 2023 WL 8009319, at *13-15 (E.D.N.Y. Nov. 20, 2023); see also Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 108 (2d Cir. 2014) ("strongly suggest[ing]" that the district court use the lodestar method on remand to calculate attorney's fees for claims under New York law).  "Under the lodestar method, the court determines the reasonable hourly rate and multiplies it by the reasonable number of hours expended, then [may] adjust[] the fee based upon certain subjective criteria."  Flemming v. Barnwell Nursing Home & Health

4

*Facilities, Inc.*, 865 N.Y.S.2d 706, 708 (App. Div. 3rd Dep't 2008), aff'd, 15 N.Y.3d 375 (2010); see *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (similarly describing and applying the lodestar method to determine attorney's fees under New York law); accord *Murphy v. Smith*, 583 U.S. 220, 227 (2018) (describing the lodestar method under federal law). A lodestar calculated under New York law must be fair based on (1) the time, labor, and skill required to handle the case given the difficulty of the issues in dispute; (2) the attorney's experience, ability, and reputation; (3) the amount of money in dispute and the benefit received from the attorney's services; (4) fee awards in similar cases; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved. *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 251 n.8 (2d Cir. 2004) (citing *In re Estate of Freeman*, 34 N.Y.2d 1, 9 (1974)); see *F.H. Krear & Co.*, 810 F.2d at 1263; *Matakov*, 924 N.Y.S.2d at 346; *Green v. Silver*, 913 N.Y.S.2d 574, 574-75 (App. Div. 2nd Dep't 2010); accord *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2007) (holding that attorney's fees awarded under federal law must be reasonable based on similar factors).

"New York courts have stated that, as a general rule, they will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation." *F.H. Krear & Co.*, 810 F.2d at 1264. Attorney's fees may, however, exceed damages for unpaid wages. That is because "[f]ee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (internal quotation marks omitted); see *Schiferle v. Capital Fence Co., Inc.*, 61 N.Y.S.3d 767, 773 (App. Div. 4th Dep't 2017) (explaining that the NYLL's grant of attorney's fees provides the "financial incentive to undertake wage theft cases" because "wage claims often involve relatively small sums"). Thus, "[t]he whole

purpose" of fee-shifting in NYLL wage cases "is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." Luo, 649 F. App'x at 3 (internal quotation marks omitted).

**C.     Determining Costs**

An award of costs "normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Fisher, 948 F.3d at 600 (internal quotation marks and brackets omitted); see LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  For example, fees incurred for court filing, process servers, printing, photocopying, messenger services, postage, telephone services, transcripts, transportation, meals, subpoenas, witness fees, deposition services, and transcripts are recoverable. See, e.g., Spence v. Ellis, No. 07-CV-5249, 2012 WL 7660124, at *9 (E.D.N.Y. Dec. 19, 2012) (collecting cases awarding costs for these expenditures), report and recommendation adopted, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013).  The applicant "must submit adequate documentation" in support of the requested costs. Fisher, 948 F.3d at 600.

## III.     DISCUSSION

Plaintiff seeks attorney's fees for work performed by his attorneys, Ms. Nadia M. Pervez and Ms. Aneeba Rehman, and two student law clerks.  (Pl. Mem., ECF No. 83-1 at 6-7.)  Plaintiff requests $88,660.10 in fees based on 205.37 hours worked by the attorneys and 20.58 hours worked by the law clerks.  (See ECF No. 83-3 at 10; ECF No. 89-1; ECF No. 89-4.)  Plaintiff also seeks $2,309.80 in costs.[2]  (ECF No. 83-3 at 10-11.)

---

[2]     Plaintiff's memorandum of law requests $70 more in costs, for a total of $2,379.80.  (ECF No. 83-1 at 1, 11.) The Court assumes that higher figure was entered in error because it is inconsistent with Plaintiff's documentation supporting the request for costs. (See ECF No. 83-3 at 10-11 (itemizing and accurately totaling those costs to $2,309.80); ECF No. 83-2 ¶¶ 3, 6 (declaration by Plaintiff's counsel swearing to the accuracy of the costs itemized in ECF No. 83-3); see also ECF No. 83-4 (providing proof of payment for most costs).)

6

## A.      Threshold Issues

As a threshold matter, Defendants insist that Plaintiff should not receive any fee award. The supporting arguments fail to persuade the Court to deny or even reduce a fee award here.

Defendants assert that Plaintiff's motion is deficient because it does not include a retainer agreement.  (See Opp., ECF No. 86-1 at 4, 8.)  Not so.  "While a retainer agreement can serve as evidence of counsel's customary rate, Defendant[s do] not cite, and the Court cannot identify, a case that *mandates* the production of a retainer agreement to support an award of attorneys' fees." Martinez v. Paramount Country Club, LLC, No. 18-CV-04668, 2019 WL 2450856, at *2 (S.D.N.Y. Apr. 1, 2019), report and recommendation adopted, 2019 WL 2171109 (S.D.N.Y. May 20, 2019).  Courts, including in the Dajbabic v. Rick's Cafe case that Defendants rely upon for the supposed necessity of a retainer agreement, routinely award attorney's fees without reviewing a retainer agreement.  See, e.g., 995 F. Supp. 2d 210, 213 (E.D.N.Y. 2014); Paramount Country Club, 2019 WL 2450856, at *4.

Defendants contend that Plaintiff's motion is deficient because it does not attach proof of what "paying clients" remit to Plaintiff's counsel.  (Opp., ECF No. 86-1 at 4.)  That argument fails as a matter of law and logic.  Defendants cite no authority that requires such proof.  In fact, the quote from Dajbabic that Defendants rely upon contravenes their argument.  As that court (and many others) explained, a reasonable hourly rate is what "a paying client would be"—not necessarily has been—"willing to pay."  Dajbabic, 995 F. Supp. 2d at 213 (quoting Arbor Hill, 522 F.3d at 190) (emphasis added).  For that reason, attorney's fees are based on "various factors" and not merely proof of payment.  Id. (citing Arbor Hill, 522 F.3d at 190).  Requiring proof of payment would also contravene the fee shifting statute's purpose: to incentivize plaintiffs' attorneys to take wage and hour cases because such cases typically would be noneconomical if

paid for by clients. <u>See</u> <u>Fisher</u>, 948 F.3d at 603; <u>Luo</u>, 649 F. App'x at 3; <u>Schiferle</u>, 61 N.Y.S.3d at 773.  As a result, courts routinely award attorney's fees where plaintiffs' counsel has not been paid, such as where a case is taken on contingency. <u>See</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 93 (1989) (holding that courts should impose the higher of reasonable attorney's fees calculated under the lodestar method or the retainer agreement's contingency clause); <u>Porzig v. Dresdner,</u> <u>Kleinwort, Benson, N. Am. LLC</u>, 497 F.3d 133, 142 (2d Cir. 2007) (similar).

Defendants argue that Plaintiff acted "in bad faith" because he brought claims that were ultimately dismissed, and because he explored but did not ultimately seek collective or class action relief.  (Opp., ECF No. 86-1 at 8; <u>see</u> <u>id.</u> at 9-11.)  A showing of bad faith requires specific factual findings of a motive in furtherance of "improper purposes such as harassment or delay."  <u>Trs. of</u> <u>the N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC</u>, 102 F.4th 572, 614 (2d Cir. 2024) (quoting <u>Eisemann v. Greene</u>, 204 F.3d 393, 396 (2d Cir. 2000)).  A claim's lack of merit does not necessarily reflect bad faith.  <u>See</u> <u>Eisemann</u>, 204 F.3d at 396-97.  Defendants' conclusory allegations of bad faith are meritless.  First, Plaintiff dismissed the FLSA claims—at the Court's request—solely to streamline the issues at trial because nearly identical relief was available for the claims under New York law.  (<u>See</u> <u>supra</u> Part I.)  Second, the minimum wage and spread of hours claims were only dismissed after the Court explained to the parties that calculating Plaintiff's hourly wages confirmed that he made no less than the minimum wage at all relevant

times.[3]  Defendants' failure to raise (and perhaps even undertake) the same calculation over the nearly four years the minimum wage and spread of hours claims were pending undermines the argument that those claims were so patently deficient that Plaintiff must have brought them in bad faith.[4]  Third, the authority whereby the Court dismissed the wage notice and wage statement claims—TransUnion LLC v. Ramirez, 594 U.S. 413 (2021) and its progeny—postdate the commencement of this case by at least eighteen months.  (See Nov. 10, 2023, Order.)  Fourth, that Plaintiff's counsel did not ultimately seek relief on behalf of similarly situated individuals does not mean that the collective and class action portions of the Complaint and Plaintiff's pursuit of related discovery reflect bad faith.[5]  Ultimately, Defendants fall far short of meeting the "high standard" to show that Plaintiff acted in bad faith.  Wang v. XBB, Inc., No. 18-CV-7341, 2023 WL 2614143, at *8 (E.D.N.Y. Mar. 23, 2023) (declining to limit attorney's fees where allegations of bad faith were unsubstantiated), reconsideration denied, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024).

---

[3]     Plaintiff worked for Defendants from 2015-2019.  (See ECF No. 65-1 at 3 (stipulating to this fact).)  The applicable minimum hourly wage ranged from $8.75 to $12.00.  See LAB. LAW § 652.  Plaintiff alleged that Defendants paid him between $150.00 and $300.00 per day, irrespective of hours worked.  (ECF No. 1 ¶ 19.)  Plaintiff also alleged that he worked eleven hours per day "4-5 days per week."  (Id. ¶¶ 16-17.)

        Determining the hourly pay for an employee not paid by the hour requires dividing the employee's weekly earnings by the number of hours he worked during the week.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16.  Using his alleged figures, Plaintiff earned no less than $13.64 per hour—which exceeded the highest applicable minimum hourly wage—as calculated by multiplying the minimum daily rate ($150.00) times the number of days worked in a week (four or five) and dividing the result ($600.00 for a four-day work week or $750.00 for a five-day work week) by the number of hours worked (forty-four hours in a four-day work week or fifty-five hours in a five-day work week).  The jury's findings confirmed that Plaintiff's minimum wage claim was deficient.  (See ECF No. 82 ¶ 7 (finding Defendants paid Plaintiff $16.00 or more per hour at all relevant times).)  That Plaintiff received more than the minimum wage doomed his spread of hours claim.  See e.g., Hyunhuy Nam v. Permanent Mission of the Korea to the UN, 657 F. Supp. 3d 382, 420 (S.D.N.Y. 2023); Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011); Benitez v. Bolla Operating LI Corp., 137 N.Y.S.3d 371, 373-74 (App. Div. 2nd Dep't 2020).

[4]     The Court similarly rejects Defendants' related assertion that Plaintiff's counsel violated ethical obligations in bringing or maintaining the minimum wage and spread of hours claims.  (See Opp., ECF No. 86-1 at 6-7, 10.)

[5]     Plaintiffs regularly simultaneously pursue FLSA claims through a collective action under 29 U.S.C. § 216(b) and NYLL claims through a class action under Federal Rule of Civil Procedure 23.  See Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 510 (2d Cir. 2020) (explaining that plaintiffs frequently take this "hybrid" approach).

B.     **Attorney's Fees**

1.     **Hourly Rate**

In New York, an attorney's reasonable hourly rate "should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented." E. Ramapo Cent. Sch. Dist. v. N.Y. Sch. Ins. Reciprocal, 158 N.Y.S.3d 173, 181 (App. Div. 2nd Dep't 2021) (internal quotation marks omitted); accord Restivo v. Hessemann, 846 F.3d 547, 590 (2d Cir. 2017) (explaining the similar "forum rule" that applies to attorney's fee requests under federal law).  This analysis considers the legal issues litigated because "to define markets simply by geography is too simplistic." Arbor Hill, 522 F.3d at 192.  At bottom, determining a reasonable hourly rate requires "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which can "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."  Townsend v. Benjamin Enters., 679 F.3d 41, 59 (2d Cir. 2012) (internal quotation marks omitted).

Plaintiff requests a $425 hourly rate for time billed by his counsel.  (Pl. Mem., ECF No. 83-1 at 6.)  At all relevant times, Ms. Pervez and Ms. Rehman have been shareholders in the firm of Pervez & Rehman, P.C.  (Id. at 4.)  Approved hourly rates in this district for law firm partners or shareholders normally range from $200 to $450.  See Bay Park Ctr. for Nursing v. Philipson, 659 F. Supp. 3d 312, 318 (E.D.N.Y. 2023).  Plaintiff's counsel each have approximately fifteen years of litigation experience, with "most" of that time "dedicated to employment matters and wage and hour litigation." (Pl. Mem., ECF No. 83-1 at 4.)  Nonetheless, courts in this district have generally reserved granting hourly rates of $400 or more in wage and hour cases for attorneys with more experience.  See, e.g., Lopez v. 1923 Sneaker, Inc., No. 18-CV-3828, 2021 WL 1845057, at

*10 (E.D.N.Y. Mar. 5, 2021) (declining request for a $400 hourly rate to compensate a partner with eighteen years of experience), report and recommendation adopted, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); Villarrubia v. La Hoguera Paisa Rest. & Bakery Corp., No. 18-CV-4929, 2020 WL 6430327, at *2 (E.D.N.Y. Oct. 9, 2020) (similar), report and recommendation adopted, 2020 WL 6415171 (E.D.N.Y. Nov. 2, 2020); see also Martinez v. New 168 Supermarket LLC, No. 19-CV-4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (deeming $400 hourly rate appropriate for a partner with twenty-three years of experience), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020); Rodriguez v. Yayo Rest. Corp., No. 18-CV-4310, 2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019) (deeming $450 hourly rate appropriate for a partner with thirty-six years of experience), report and recommendation adopted, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019).  Accordingly, the Court concludes that a $375 hourly rate is reasonable for time expenditures by Plaintiff's counsel on legal matters.[6]  See Lopez, 2021 WL 1845057, at *10 (awarding $375 hourly rate for the managing partner of a firm with eighteen years of experience); Villarrubia, 2020 WL 6430327, at *2-3 (similar); Cohetero v. Stone & Tile, Inc., No. 16-CV-4420, 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (awarding $375 hourly rate for an attorney with fifteen years of experience, including "significant experience in FLSA and NYLL lawsuits").

Plaintiff seeks an $80 hourly rate for time billed by the two student law clerks.  (Pl. Mem., ECF No. 83-1 at 7.)  "In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals."  LG Cap. Funding, LLC v. 5Barz Int'l, Inc., No. 16-CV-2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (collecting cases).  Such an hourly rate

---

[6]     The Court is not persuaded by Plaintiff's citations to cases that awarded Pervez & Rehman, P.C. over $400 per hour.  (See Pl. Mem., ECF No. 83-1 at 5.)   Plaintiff acknowledges that those awards were granted pursuant to consent motions for settlement approval under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). Here, by contrast, the requested attorney's fees are opposed.  (Opp., ECF No. 86-1); see Lu v. Purple Sushi, Inc., No. 19-CV-5828, 2024 WL 2781157, at *4 (S.D.N.Y. May 28, 2024) (declining to award fees at hourly rates the subject counsel received on consent from prior Cheeks motions).

is reasonable between $70 and $100.  E.g., Philipson, 659 F. Supp. 3d at 318.  Therefore, the Court will apply the requested $80 hourly rate.  See Burkett v. Houslanger & Assocs., PLLC, No. 19-CV-2285, 2020 WL 5834429, at *2-3 (E.D.N.Y. Sept. 30, 2020) (awarding $80 hourly rate for a student law clerk); LG Cap. Funding, 2019 WL 3082478, at *2 (awarding $85 hourly rate for student law clerks).

### 2.    Number of Hours

"Under New York law, 'it is settled that the award of fees must be predicated upon a 'proper and sufficient affidavit of services.'"  Major League Baseball Properties, 2021 WL 56904, at *4 (quoting Bankers Fed. Sav. Bank FSB v. Off W. Broadway Devs., 638 N.Y.S.2d 72, 74 (App. Div. 1st Dep't 1996)); see Sterling Nat'l Bank v. Alan B. Brill, P.C., 129 N.Y.S.3d 151, 157 (App. Div. 2nd Dep't 2020).  Thus, "under New York law, the party seeking a fee 'bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent."  Major League Baseball Properties, 2021 WL 56904, at *4 (quoting Flemming, 865 N.Y.S.2d at 708).  "Counsel is not required to record in great detail how each minute of h[er] time was expended, but [s]he must identify the general subject matter of h[er] time expenditures."  Raja v. Burns, 43 F.4th 80, 87 (2d Cir. 2022) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983)); see also Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992) (explaining that New York law, unlike federal law, allows attorney's fee applicants to rely on reconstructed rather than contemporaneous time records).

Plaintiff's counsel provided detailed billing records for this case.  (ECF No. 83-3.)  The records set forth each task and its date, duration, and billing individual.  (Id.)  The records describe a total of 225.95 hours expended over four years and encompass, among other things, communications, pleadings, court conferences, mediations, discovery—including five discovery

12

motions, summary judgment briefing, and the three-day jury trial.[7]  (See ECF No. 83-3 at 1-10.)
Of that time, 205.37 hours were reportedly expended by counsel and 20.58 hours were expended
by student law clerks.[8]  (See ECF Nos. 89-1, 89-4.)

  "In determining the number of hours reasonably expended on a case, a district court
properly excludes documented hours that are 'excessive, redundant, or otherwise unnecessary.'
The court may also decrease the total award from the claimed amount because of 'vagueness,
inconsistencies, and other deficiencies in the billing records.'"  Raja, 43 F.4th at 87 (first quoting
Hensley, 461 U.S. at 434; and then quoting Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.
1998)).  Further, "the court has discretion simply to deduct a reasonable percentage of the number
of hours claimed as a practical means of trimming fat from a fee application." Id. (quoting Kirsch,
148 F.3d at 173).  Finally, "[t]he court may also 'reduce an attorney's hourly rate for time spent on
clerical tasks or apply an across-the-board reduction to account for time spent on clerical tasks (or
block-billed time entries reflecting a mix of clerical and legal work),' although the 'court is not
required to make such reductions.'"  Id. (quoting Lilly v. City of New York, 934 F.3d 222, 234 (2d
Cir. 2019)) (ellipsis omitted).

---

[7] Courts have concluded that comparable hours were reasonably expended in wage and hour cases similarly
litigated through short jury trials.  See Sun v. Sushi Fussion Express, Inc., No. 16-CV-4840, 2022 WL 2193441, at *6
(E.D.N.Y. June 17, 2022) (awarding attorney's fees for over 215 hours spent to litigate through a three-day jury trial);
Lianhua Weng v. Kung Fu Little Steamed Buns Ramen, Inc., No. 17-CV-273, 2021 WL 2043399, at *2 (S.D.N.Y.
May 21, 2021) (awarding attorney's fees for 230 hours spent to litigate through a four-day jury trial); Wang v. Yong
Lee Inc., No. 17-CV-9582, 2022 WL 17756593, at *2 (S.D.N.Y. Dec. 19, 2022) (awarding attorney's fees for over
200 hours spent to litigate through a two-day jury trial); Cuevas v. Ruby Enterprises of New York Inc., No. 10-CV-
5257, 2013 WL 3057715, at *3 (E.D.N.Y. June 17, 2013) (similar).

[8] Plaintiff's counsel state that these numbers underreport the time expenditures in two respects.  First,
Plaintiff's counsel "only bill for the time of one-attorney at a time" as a matter of firm policy, which means the time
of just one attorney is recorded when counsel work simultaneously.  (Pl. Mem., ECF No. 83-1 at 4-5; see id. at 6
(similar).)  Second, Plaintiff's counsel submitted "less than 25%" of the work performed by the student law clerks "in
good faith and in an effort to submit a reasonable invoice."  (Id. at 7.)  Plaintiff's counsel has not specified the number
of expended hours excluded from the fee application.

a.      Counsel's Hours for Clerical Emails Will Be Reduced and Awarded at the
        Paralegal Rate

The Court will apply a lower rate to the time counsel spent emailing about non-substantive

matters.  See Raja, 43 F.4th at 87; Lilly, 934 F.3d at 234.  The billing records show that Plaintiff's

counsel billed approximately twenty hours for various non-substantive email activities.  (ECF No.

89-1.)  Five of those hours were expended on a single day, July 15, 2021, in one block entry from

Ms. Rehman with the description "Emails to/from R.K. confirming 7/16 deposition." (ECF No.

89-1; see also id. (explaining that "R.K." is Richard Kantro from opposing counsel's office).)

Several other entries billed by counsel likewise concern emails about seemingly simple matters,

including case updates or logistics.   For example, counsel's billing records show at least

(a) nineteen entries for emails "to/from client" or about "case status," (b) seventeen entries for

emails about scheduling depositions or obtaining deposition transcripts, (c) eight entries for emails

about scheduling conferrals with opposing counsel, and (d) one entry for an email about seeking a

trial adjournment.  (See id.)  "These are administerial tasks and should not be billed at partner

rates."  Jones v. Pawar Bros. Corp., No. 17-CV-3018, 2023 WL 6214213, at *11 (E.D.N.Y. Sept.

25, 2023) (quoting Lopez, 2021 WL 1845057, at *12), appeal withdrawn, No. 23-7385, 2024 WL

1609743 (2d Cir. Mar. 18, 2024); see Shin v. Party Well Rest & Oriental Bakery Inc., No. 20-CV-

1319, 2024 WL 1327420, at *5 (E.D.N.Y. Mar. 28, 2024) ("[M]any of the emails appear to relate

to scheduling, a task that is often considered to be administrative and should not be billed at the

full attorney rate.").  Instead, time spent on these emails "should have been billed at a paralegal

rate."  E.g., Lu Wan v. YWL USA Inc., No. 18-CV-10334, 2021 WL 1905036, at *7 (S.D.N.Y.

May 12, 2021) (reducing attorney's fees for time spent emailing to schedule depositions).

Accordingly, the Court subtracts twenty hours from counsel's time expenditures.  The Court adds

15.5 hours—reflecting the just-subtracted time less 4.5 out of the 5 hours expended on July 15,

14

2021, for emailing to confirm the next day's deposition—to the law clerks' time expenditures at the paralegal rate.

        b.    <u>The Court Excludes Hours for Unsuccessful Claims that are Ineligible For Attorney's Fees</u>

Defendants ask the Court to exclude time spent on unsuccessful claims from any attorney's fees award.  (<u>See</u> Opp., ECF No. 86-1 at 8.)  "[H]ours 'dedicated to severable unsuccessful claims' should be excluded from any award calculation."  <u>P.J. v. Conn. State Bd. of Educ.</u>, 931 F.3d 156, 168 (2d Cir. 2019) (quoting <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999)).  Thus, the Court may award fees for unsuccessful fee-shifting claims only if they are "inextricably intertwined" with the successful claims, meaning the claims "involve a common core of facts or are based on related legal theories."  <u>Holick v. Cellular Sales of N.Y., LLC</u>, 48 F.4th 101, 106 (2d Cir. 2022) (quoting <u>Quaratino</u>, 166 F.3d at 425).

    The Court will not award attorney's fees for the wage notice and wage statement claims because they were dismissed for lack of standing.  <u>See</u> <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 480 (1990) (holding that an interest in attorney's fees does not confer standing to obtain relief on a cause of action).  Moreover, those unsuccessful claims are not inextricably intertwined with the successful overtime claim.  <u>See</u> <u>Sanchez v. Oceanside First Class Roofing, Inc.</u>, 818 F. App'x 106, 108 (2d Cir. 2020) (explaining that "overtime claims required proof as to what hours Plaintiffs worked, while the notice claims required only a showing that notice was not given"); <u>Piccolo v. Top Shelf Prods.</u>, 541 F. Supp. 3d 256, 262-63 (E.D.N.Y. 2021) (similar).  The Court also will not award attorney's fees for the unsuccessful retaliation claims because they are "legally and factually

distinct" from the successful overtime claim.[9]  Coker v. Goldberg & Assocs. P.C., No. 21-CV-01803, 2024 WL 2274035, at *3 (S.D.N.Y. May 20, 2024).  By contrast, the minimum wage and spread of hours claims are inextricably intertwined with the overtime claims because they all "clearly arise from a common nucleus of operative fact" regarding the hours Plaintiff worked for Defendants.  Holick, 48 F.4th at 108; see Coker, 2024 WL 2274035, at *3.

The Court may "attempt to identify specific hours that should be eliminated, or . . . simply reduce the award."  Hensley, 461 U.S. at 436–37.  Plaintiff's billing records do not differentiate time spent on the unsuccessful wage notice, wage statement, or retaliation claims, on the one hand, from the successful overtime claim and the intertwined (though unsuccessful) minimum wage and spread of hours claims, on the other hand.  (See ECF No. 83-3.)  Nonetheless, the Court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time" because "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  Fox v. Vice, 563 U.S. 826, 838 (2011).  Accordingly, the Court deems appropriate a flat 25% reduction to the hours component of the lodestar calculation.  See Konits v. Karahalis, 409 F. App'x 418, 421–22 (2d Cir. 2011) (affirming 25% reduction where billing records did not differentiate expenditures between successful and unsuccessful claims); Pardovani v. Crown Bldg. Maint. Co., No. 15-CV-09065, 2023 WL 3597615, at *3 (S.D.N.Y. May 23, 2023) (same).

---

[9]       Defendants insist that any fee award must reflect that Plaintiff impermissibly brought his retaliation claim.  (See Opp., ECF No. 86-1 at 11-19.)  According to Defendants, Plaintiff's claim before the New York State Division of Human Rights (1) asserts that his employment was terminated for complaining about a hostile work environment, which is inconsistent with his claim here that his employment was terminated for complaining about his wages, and (2) impermissibly seeks the same relief as Plaintiff's retaliation claim here.  (See id.; but see Reply, ECF No. 87-6 at 13-14 (countering that Defendants' argument cherry picked a typo from a footnote in a submission in the state proceeding and otherwise mischaracterizes that action and this one).)  The Court does not address these arguments given its decision to not award attorney's fees for Plaintiff's unsuccessful retaliation claim.

### 3.      Degree of Success

Defendants ask the Court to reduce any attorney's fees award on the successful claims to reflect that Plaintiff's success was "extremely limited." (Opp., ECF No. 86-1 at 9-10.)  The parties agree that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436); (see Pl. Mem., ECF No. 83-1 at 6; Opp., ECF No. 86-1 at 2, 9).)   "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Holick, 48 F.4th at 106 (quoting Hensley, 461 U.S. at 440).  In other words, the lodestar may be "an excessive amount" subject to reduction where "a plaintiff has achieved only partial or limited success . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436.  Where, as here, recovering damages "is the purpose" of litigation, a district court determining attorney's fees "is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Farrar, 506 U.S. at 114 (quoting Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring)). Thus, "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in h[is] complaint, are key factors in determining the degree of success achieved." Holick, 48 F.4th at 109 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008)).

Plaintiff's Complaint primarily sought (1) designation of this case as a collective and class action, (2) unpaid minimum wages, (3) unpaid overtime wages, (4) unpaid spread of hours wages, (5) liquidated and statutory damages for the wage and hour claims, (6) compensatory damages for the retaliation claims, and (7) liquidated and punitive damages for the retaliation claims.  (ECF No. 1 ¶¶ 37-53, 65, 74-75, 79-80, 84-86; see also id. at 17-19.)  Though Plaintiff's Complaint did

not request a specific dollar-value (<u>see</u> <u>id.</u>), its attached Civil Cover Sheet confirmed that Plaintiff sought over $150,000.00.  (<u>See</u> ECF No. 1-1 at 1.)

Plaintiff obtained a scintilla of that relief.  Plaintiff abandoned his pursuit of collective/class relief fifteen months into this case—after he sought collective/class discovery from Defendants and filed two unsuccessful motions to compel production of that discovery.  (<u>See</u> ECF Nos. 17, 20 (denying Plaintiff's motions to compel production of collective/class discovery for lack of an application for conditional certification and lack of sufficient meet and confer efforts); ECF No. 21-1 (confirming in March 2021 that Plaintiff's counsel abandoned collective/class relief after the Court denied the second motion to compel).)  Plaintiff did not obtain damages for minimum and spread of hours wages because those claims were dismissed.  <u>See</u> <u>supra</u> Part I.  The jury awarded Plaintiff just $1,600 for unpaid overtime wages from 2015.  (<u>See</u> ECF No. 82 ¶¶ 1, 6-9 (finding some overtime hours from 2015 were undercompensated and providing the figures for calculating the unpaid amount owed); <u>see also</u> ECF No. 85-1 (Plaintiff's confirmation that the jury awarded $1,600 for unpaid wages).)  The jury's conclusion that Defendants proved they acted in good faith precluded liquidated overtime damages.  (<u>See</u> ECF No. 82 ¶ 13); Lab. Law § 198(1-a).  And the jury rejected Plaintiff's retaliation claim.  (<u>See</u> ECF No. 82 ¶ 3.)

A substantial reduction in attorney's fees is warranted given Plaintiff's dismal success relative to the relief he sought.  "There is no precise rule or formula" for calculating a reduction for lack of success.  <u>Hensley</u>, 461 U.S. at 436; <u>see</u> <u>Kassim v. City of Schenectady</u>, 415 F.3d 246, 256 (2d Cir. 2005) (holding that a district court may reduce attorney's fees due to limited success so long as it "provide[s] a concise but clear explanation" for doing so (quoting <u>Hensley</u>, 461 U.S. at 437)); <u>see also</u> <u>Fox</u>, 563 U.S. at 838 (holding that "trial courts need not, and indeed should not, become green-eyeshade accountants" to set attorney's fees).  The Court concludes that a 40%

18

reduction is warranted because, as explained above, Plaintiff obtained "just a fraction" of the relief he sought. Holick, 48 F.4th at 109–10 (affirming 40% attorney's fee reduction where the plaintiffs failed to obtain class certification and secured minimal damages relative to the damages requested); see Barfield, 537 F.3d at 152 (affirming 50% attorney's fee reduction—even though the plaintiff obtained nearly all relief he individually sought—because the plaintiff pursued collective/class certification for four months but never obtained it); Sanchez, 818 F. App'x at 108 (reducing attorney's fees by 50% "to reflect Plaintiffs' lack of success" where they sought $96,382.32 to compensate for wage notice, wage statement, and overtime claims but obtained only $7,500 on the wage statement claims)[10]; see also Chabad Lubavitch of Litchfield Cty. v. Litchfield Historic Dist. Comm'n, 934 F.3d 238, 245 (2d Cir. 2019) (affirming 50% attorney's fee reduction where plaintiff obtained only some of the injunctive relief and none of the damages it requested).

### 4.     The Calculation

Plaintiff's attorney's fees award is calculated as follows:

| Billers | Rate Sought | Rate Awarded | Hours Sought | Hours Adjusted for Clerical Emailing | Hours Excluding Claims Ineligible for Fee Shifting | Subtotal | Total Accounting for Lack of Success |
|---|---|---|---|---|---|---|---|
| Attorneys | $425 | $375 | 205.37 | 185.37 | 139.03 | $52,136.25 | $31,281.75 |
| Law Clerks | $80 | $80 | 20.58 | 36.08 | 27.06 | $2,164.80 | $1,298.88 |

Therefore, Plaintiff is awarded $32,580.63 in attorney's fees.

---

[10]     The Sanchez plaintiffs' request for $96,382.32 and the underlying calculations are set forth at ECF No. 35-2 in Sanchez et al v. Oceanside First Class Roofing, Inc. et al, Case No. 16-cv-02064 (E.D.N.Y.).

C.      **Costs**

Plaintiff seeks $2,309.80 for costs incurred to file the case, obtain deposition transcripts, mail motion papers, and print materials for trial.  (See ECF No. 83-3 at 10-11.)  Such costs are routinely granted in successful wage and hour cases.  See, e.g., Fisher, 948 F.3d at 601-02.  Costs are substantiated when they are (1) court fees reflected on the docket, (2) supported by extrinsic proof, or (3) sworn to under penalty of perjury in a detailed statement.  See Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020).  Plaintiff's counsel submitted a sworn declaration that lists for each cost a description of the product or service obtained, the amount and date of payment, and the person who authorized it.  (See ECF No. 83-2 ¶¶ 3, 6; ECF No. 83-3 at 10-11.)  Plaintiff also submitted receipts that substantiate those costs.  (ECF No. 83-4.)  Defendants raise no issues with the accuracy or value of the costs Plaintiff seeks to recover.  (See generally, Opp., ECF No. 86-1.)  Accordingly, the Court grants Plaintiff $2,309.80 for costs.

### IV.      CONCLUSION

For the reasons stated above, Plaintiff's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART such that Plaintiff is awarded $34,890.43, composed of $32,580.63 for attorney's fees and $2,309.80 for costs.

**SO ORDERED.**

Dated:    August 6, 2024
              Central Islip, New York

                                                    _____
                                                    (/s/ JMA)
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE